J. R. WILLIAMS ET AL., TAXPAYERS, v. COUNTY COMMISSIONERS OF FRANKLIN.

(Filed 12 October, 1921.)

1. **Taxation— Counties— Equalization—Statutes—County Commissioners —Officers—Functus Officio.**

Our statute, Laws 1921, ch. 38, provides for the revaluation of property for purposes of taxation by the commissioners of a county, that their action be certified to and approved by the State Tax Commission, etc., and specifies, in the various sections, the dates "not later than which" these things shall be done: *Held,* the dates so fixed are mandatory and not directory, and the county commissioners are *functus officio* thereafter.

2. **Same—Elective Procedure.**

After the board of county commissioners have met within the time prescribed by statute, and have elected, upon investigation, to make a horizontal cut in equalizing the value of property, and have certified the same to the State Tax Commission, which has been approved, etc., ch. 38, Laws 1921, secs. 28 (a) and (b), they may not in lieu of these sections proceed under sec. 28 (c), to increase the tax value of some of the towns and townships, the remedy being elective at their former meeting, and it being required by this section that the work shall be completed "not later than" 1 July, and reported "not later than 15 July" to the State Tax Commission, their attempt to do so in August was *functus officio,* and their act will be restrained.

APPEAL by defendants from an order of *Bond, J.,* 22 August, 1921, continuing restraining order to the hearing, from FRANKLIN.

This is an action by J. R. Williams and others, taxpayers of Franklin County, to restrain the county commissioners of Franklin from revaluation and raising the levy of taxes after the date prescribed by law. The

restraining order was granted by *Devin, J.,* 2 August, 1921. The motion to dissolve the restraining order was heard by *Bond, J.,* in Raleigh on 22 August, 1921. The motion was refused and the restraining order was continued to the final hearing. Appeal by defendants.

*W. M. Pearson* for plaintiffs.
*W. H. Yarborough* and *Ben T. Holden* for defendants.

CLARK, C. J. The defendant board of commissioners of Franklin County, in accordance with the provisions of Laws 1921, ch. 38, met on Tuesday after the first Monday in April, 1921, and after inquiry and investigation as to the value of the real estate in said county, recommended the value be reduced by a horizontal reduction of 40 per cent, applicable to the whole county. Their recommendation was certified to the State Tax Commission under section 28 (a) and approved by the State Tax Commissioner 15 June, 1921; was the same day certified to the defendant board of county commissioners. Thereafter on the second Monday in July, 1921, the defendant county commissioners met as a board of equalization for the purpose of hearing complaints and equalizing values in the various localities. There being a number of complaints the commissioners, in order to ascertain more fully the values in the different localities, passed a resolution to inspect such parcels of real estate in company with the various taxlisters or other freeholders residing in their respective townships, and after making such investigations the commissioners on 26 July issued 904 notices to taxpayers in two townships in which they had made an increase of approximately a million and a half dollars in valuation to another township in which they had made an increase of $10,000, and to taxpayers in the three towns of Youngsville, Franklinton and Louisburg, in which there had also been increases in taxation, to show cause against the increase on 2 August; but no notices were sent out to any taxpayers in any other townships. There are ten townships in Franklin County. Why this discrimination does not appear.

The ground upon which *Devin, J.,* granted the restraining order and *Bond, J.,* refused to dissolve the same and continued the restraining order to the final hearing, and upon which this Court is asked to affirm rests chiefly, if not entirely, upon the proposition that the county commissioners acted without authority in attempting to revalue the property in the parts of the county above designated at a time when they were *functus officio.*

Laws 1921, ch. 38, sec. 28 (a), authorizes the board of county commissioners on Tuesday after the first Monday in April, 1921, acting as a board of review, to make a horizontal reduction throughout the county

if, in their judgment, they find that the assessed value is in excess of the actual value. At such meeting the board of commissioners made a horizontal cut of 40 per cent as above stated, which was certified to the State Tax Commission "not later than 20 April, 1921," and the State Tax Commission approved said horizontal reduction, and certified their approval to the county commissioners "not later than 15 June," as the statute provided. This section further provides that this horizontal reduction "shall be the values at which the property *shall be assessed for taxation,* unless and until the same have been changed and revised by the State Tax Commission, and certified to the board of county commissioners of such county, which shall be done *not later* than 1 July, 1921." This was certified as above stated on 15 June.

Section 28 (b) of said chapter 38 further provides that the county commissioners shall have authority to hear specific complaints of over-valuation or under-valuation of any particular tracts of land if the complaint is made and the reassessment and reappraisement by the board was made during the month of May. This was not done during May as to any of the property affected by the revaluation as to which this injunction is served.

Said section 28 (b) further provides that the county commissioners may appoint the county auditor or any resident freeholder of the county to investigate and report upon all such specific complaints and provides, "The county board of commissioners shall thereupon approve or revise such recommendations, and shall *not later than 15 July, 1921,* make report to the State Tax Commission of the increases and reductions in the valuation of specific properties made under authority of this section.

Said chapter 38, sec. 28 (c) provides that if the board of commissioners at their regular meeting on first Monday in April, 1921, "shall be of the opinion that the valuation of real estate in such counties is so unequal as between the owners of real property in such county as to require more general revision of assessments than is practicable to be made under provision of subsection (a) and (b) of this section"—that is, by horizontal reduction as was made, and by specific complaint which should have been filed in May—"or the value of real property, as heretofore appraised in such county as a whole is in excess of the present actual value of such property, it may by resolution so find and order that such revision be made. In the event that such order is made, it shall be *in lieu of the remedies provided in subsection (a) and (b) of this section,* and the board of county commissioners shall appoint a board of review composed of three resident freeholders . . . who have general knowledge of the value of real estate in such county, and such board of review may appoint such number of assistants as in their judgment is necessary to complete such revision, not later than 1 July,

1921." Then follows the manner in which they should execute their duties, which as above provided should be completed "not later than 1 July, 1921." This section further provides: "A complete abstract of such revised assessment by townships, giving average value per acre, and value of town lots and the value as a whole shall be made to the board of county commissioners of such county, and to the State Tax Commission, *"not later* than 15 July, 1921," and shall be subject to the authority of the State Tax Commission, as the State Board of Equalization, so as to preserve a proper equalized value of real property in the several counties."

Section 28 (d) provides that "the report of the board of county commissioners made pursuant to section 28 (b) and the abstracts as reported by the board of review, under section 28 (c) shall be the basis for the assessment of taxes, unless and until the same are changed by the tax commission on or before 1 September, 1921, and the said State Tax Commission shall, on or before 1 September, 1921, certify down to the board of county commissioners of the several counties its findings and conclusions upon said report and abstracts."

It will be seen by perusal of the above provisions of the statute that section 28 (a) authorized the county commissioners on the first Tuesday after the first Monday in April to make a horizontal reduction of the valuation throughout the county and report the same to the State Tax Commission *not later* than 20 April, 1921, and that said commission shall act upon said report, and that said values shall be the values assessed for taxation unless changed by the State Tax Commission, who shall certify down their action *not later* than 1 July, 1921. The action of the county commissioners in making a 40 per cent reduction was approved and certified to defendants 15 June.

Then section 28 (b) provides that during May specific complaints may be made as to the valuation of any particular tract of real estate, after the general equalization order provided for in the preceding section shall have been made, and the board during the month of May may act upon such complaints and shall report any modifications thereby made in the general order, and shall report such modifications *"not later* than 15 July" to the tax commission.

That not having been done, the attempt of the board on 2 August, 1921; to make increases of over one and a half million dollars in the valuation for taxation of the property of 904 taxpayers in three townships and three towns was without authority of law, and the restraining order was properly granted by *Devin, J.,* and the refusal to dissolve the same by *Bond, J.,* must be affirmed.

The defendants, however, contend that they acted under section 28 (c), which authorized the county commissioners when they "shall be of

opinion that the valuation of real estate in such county is so unequal as between the owners of real estate in such county as to require a more general revision of assessments than is practicable to be made under the provisions of subsections (a) and (b) of this section"—that is, by a general horizontal reduction and by specific complaints—they "may by resolution so find and order that such revision be made. In the event such order is made, it shall be *in lieu* of the remedies provided in subsections (a) and (b) of this section." It is therefore an alternative remedy which the commissioners might have elected to adopt at their meeting on Tuesday after the first Monday in April. But having adopted the other system of "horizontal reduction and specific complaints" they could not in July proceed to act under subsection (c). Even if they could do so, it would be necessary for them to set aside their horizontal reduction of 40 per cent as to the entire county, though it had been approved by the State Tax Commission, and then proceed under subsection (c) in lieu thereof.

There is this further insuperable objection that if subsection (c) had been chosen as the *alternative* to the "horizontal reduction and specific complaints," the Legislature provided that proceedings thereunder should be completed "not later than 1 July, 1921," and that the county commissioners should make their report of such revision under subsection (c) to the Tax Commission "not later than 15 July, 1921," and that body should certify down their action on or before 1 September, 1921.

On Tuesday after the first Monday in April the board of commissioners had their election to proceed by a general horizontal reduction and specific complaints, which they did, and which has been approved by the State Tax Commission.

*Or,* they might have chosen then to have proceeded under subsection (c), under which the work could be completed "not later than 1 July," and reported "not later than 15 July" to the Tax Commission, which was practicable.

They chose the first method. When becoming dissatisfied with that, they attempted in August to proceed under subsection (c), they had no authority to set aside the horizontal reduction which had received the approval of the State Tax Commission, for they were *functus officio,* and it was too late, because the statute was specific that the revision should be complete "not later than 1 July," and reported to the State Tax Commission "not later than 15 July."

There are some circumstances under which a requirement that a certain act shall be done on a date named may be treated as directory, but that is not possible when the statute conferring a power provides that it shall be performed "not later than" the time specified.

The order appealed from is

Affirmed.